Thank you, Your Honor, and may it please the Court. My name is Palmer Huvestal. I'm an attorney from Helena. I'm appearing on behalf of the appellant today, Wallene Bear. And the issue that I'd like to argue this morning is the constitutionality of the search of the purse. Co-counsel and I have agreed to split our time, so I'm going to use approximately eight minutes. I'd like to use seven in my initial argument and reserve one for rebuttal. On September 4, 2009, Fort Belknap Tribal Police Officer Justin Moore received information that a 2000-ish silver Honda Accord, or the occupants thereof, were selling methamphetamine from it. He received that when he was sitting at a convenience store in a parking lot. Another officer was sitting next to him, and he conveyed that information. Approximately two hours later, Officer Moore saw a similar-looking vehicle, at least that matched the description of this Honda Accord, fail to stop at a stop sign, and so he effectuated a traffic stop. He then approached the driver, attempted to receive the license, registration, proof of insurance from the driver. The driver produced no license, but did produce proof of insurance and the registration. At that point, the officer went back to his patrol car, called in to his superior officers to tell them that he had detained or stopped this vehicle that matched the description of the car that he had previously been given information of. So I think we're familiar with the factual background of the case, and the critical issue then is the search of your client's purse. And the district court concluded that consent had been given, apparent consent, for the search of the purse. Why do you think that argument, why do you think that was wrong? Your Honor, I think that as an initial matter, the district judge applied the wrong law. He applied the wrong case. The district court applied the case of Florida v. Gimeno and the objective reasonableness test. Cited to him was the Welch case, which is a Ninth Circuit case, which has very similar facts. In essence, in Welch, there was consent given by a man to search the vehicle. Security officers went out to the vehicle. They obtained a purse and searched it, brought it back and searched it. And in that case, the Ninth Circuit panel indicated that the Gimeno case is not the dispositive case. That's not the dispositive inquiry. Rather, the dispositive inquiry was the scope of the consent. Was this man, did he have the authority to provide consent to these security officers to search the purse that belonged to this woman? Well, here you had a different situation. You had the two women and the district court seemed to think that Amber had joint access to the purse and that was their finding. So the facts are somewhat different from the case you're referring to, aren't they? Yes, Your Honor, they are. But I think that what was critical is that the district judge had plain error in his factual findings. He found, the first thing that he did was not find, which was in the evidence, that the purse was located in the passenger compartment of the vehicle. It wasn't located in the driver compartment. It was the driver who provided the consent. So as an initial matter, the purse was clearly in the passenger compartment. Both officers, Officer Moore and Officer… By passenger compartment. Wasn't it in the middle between them? Well, the officer testified that it could have been in the console, it could have been in the passenger seat, but undeniably it was in the passenger compartment. He could not remember exactly. What do you mean by compartment? Was it in a, you mean a closed container? Or was it there in open space between the two? It was either on the seat or in the console. Compartment… What's the console? The console is the area between the two seats. Okay. So there was evidence that it was right there between them. Now, do you think that the search was permissible just under the automobile exception for searches? There was consent to search the automobile, was there not? There was… That was valid? Yes. Now, can that include the purse? No, Your Honor. Why? This is why. Because the Wyoming v. Houghton case, which is a probable cause case, dealt factually with, well, this is the holding. If an officer has probable cause to search a vehicle, then that probable cause extends to containers contained therein that might reasonably or conceivably contain the object of the search. And in Houghton, the object of the search was a syringe. In essence, the officer found a syringe in the driver's front pocket, front shirt pocket, put it on the hood of the car. The driver said, I use it to use drugs. And then he went to a purse that a passenger had, and he searched compartments in the purse that could conceivably contain a syringe. Well, don't you think this woman's purse could have contained a can of beer? Well, we're talking about an open container. We're talking about an open can of beer. And if the officer was… Well, if a purse is sitting up, can it hold a can of beer? It could, but… It certainly could go in my purse. But if the officer really was looking for an open can of beer, the only thing that he had to do was open, grab the purse, open it up and look inside and see whether there was an open can of beer. One of the odd things about the record is it doesn't reflect anything about the size of the purse. We don't know if there was a clutch or a handbag, right? No. We know that it was a black purse. Well, that doesn't help as much. Pardon me? There's a black purse, that's all we know. Yes, that's all we know. But, you know, arguably, if that's what he was going to do, then all he had to do was look in there instead of rummage around for other items. It would have been a simple matter to open up the purse, which he clearly had to do, open up the purse, look in and determine whether or not, you know, there was a can of beer in there. Open can of beer, not a closed can of beer. It's not unlawful under the tribal code to have a closed can of beer. Well, it may not be unlawful to have an open can of beer if it's empty, right? Well, the tribal code doesn't… I mean, it would be evidence that maybe it was used in a motor vehicle, but there's no prohibition against having an open but empty can of beer in a purse. Well, the tribal code doesn't distinguish between empty or full. It just says uses or consumes. But I think that's the distinguishing factor in this case. All he had to do was look and see if there was an open can of beer in there, and if not, then he moved on. The scope of the search was clearly for open containers. And with that, I see that my time is over. Okay. Ms. Lord? Good morning, Your Honors. I am Jim Lord. I'm representing Amber Bear. Would you speak up so we can all hear you? I am Jim Lord. I'm from Great Falls. I represent Amber Bear, the other defendant in this case. I won't go in. Your client did not raise the search of the purse, so we're just simply talking about the search at the cell with respect to your client, correct? I'm addressing just the search. Amber has challenged the constitutional validity of the search. Judge Reinhardt has. You're addressing only the search in the cell or the jail. Does that mean you are not seeking to take advantage of the co-defendant's argument as to the search of the purse? I certainly do, yes. I joined in that argument. So that you're just arguing on the one issue, but you're raising both. I'm raising both, yes. Amber Bear suffered the most humiliation, degrading thing that could happen to anybody. She was arrested on a traffic violation. Well, that's a little extreme. Taken to a tribal detention center, which I believe was two or three rooms at best. And she had to have an invasive manual body search conducted by questionably trained tribal detention people. One of them, I believe, was a dispatcher. Were they female? Yes, it was a female. Thank you. And she had been observed through a camera apparently taking some contraband out, correct? Well, what they thought was contraband. She reached into her bra and pulled out a white powdery substance. Yes, yes. Packets. Packets, yes. They were watching them with the video camera. But doesn't that make the difference in this case? I mean, now that they've seen her on camera with what appears to be The case law that the government relied on for this body cavity search is Bull v. Wolfish. That case and none of the other cases address this invasive manual probing of the interior of the body cavities like they went into her vagina and her rectum. Was the evidence found as a result of the internal cavity search or was the evidence found as a result of whatever these initials are that the government claims is a different search where the hand is from the bottom to the top or one end of the vagina to the other but not inside? This was inside. And they did find a small packet of green leafy substance. Do you distinguish between the two searches? The internal body cavity search at the end and the preceding search of the where there was no internal invasion but the hands run on the outside of the vagina? That's the difference in those searches. And which searches was the evidence found as a result of? I believe both, Your Honor. They found when she squatted, they had her squat and do the visual cavity search. And I believe a packet or so of whatever purported to be methamphetamine fell out. And then they went and did the more invasive probing. And the first one I think the government calls a fleck handshake. Yeah. All right. Now, that search produced evidence, right? I think it did. All right. Can you address that search? Well, it was they asked her to squat and took their hands and searched that area. But what they said, I believe in the record, was that a couple packets dropped out at that time. Wasn't that perfectly reasonable cause to do a further search? I can't imagine facts that would be more indicative than what happened here. I believe all the case law that I've cited in here says that a warrant is required if you're going to do an internal body cavity search. Well, I would think that was more. Not just a visual. Squatted down and out came some drugs, for heaven's sakes. I can't imagine anything more reasonable. Well, I'm not clear about the facts. I thought that nothing came out until they did the first search, which was the fleck search, which was running the hand along the vagina from the bottom, from one end to the other. But they said that that was the first search which produced the evidence, that nothing came without the touching of the defendant. It wasn't a visual search. Am I wrong about that? They started with a visual search. Then they proceeded on to the — Was any evidence produced by a visual search? I believe that's where the packets were dropped out. It wasn't when she squatted. With respect to your client? I mean, we have two searches involved in your client. Yes. They had the packet dropped out. Yeah. And with Mauline, it started with the cavity search. Is that right? I believe so. Yeah. Most of the case law, though, that I have cited here does not support that invasive kind of search, lacking exigent circumstances. There were no exigent circumstances here. They could have gotten a warrant to do a further search. You've got about a minute left. Do you want to reserve for rebuttal? I'm sorry? Do you want to reserve your time? You've got about a minute. Yes. I need to reserve some for that. Thank you. Thank you. Counsel. Good morning. May it please the Court. Bishop Brewell on behalf of the United States. Reasonableness under the Fourth Amendment is determined based on context. And in answering the question before this Court this morning, whether the searches of Amber and Mauline Baer were reasonable, it's important to remember that Mauline Baer was not an ordinary arrestee. The officer who ordered her search, Officer Johnson, was aware that she had been arrested before. And during that prior arrest, she had hidden drugs in her vaginal cavity. Are you addressing the search of the jail first as opposed to the purse issue? I am. Okay. No, go ahead. So Officer Holmes, who ordered that search, was aware of that fact. He was also aware that one of his dispatchers, as the Court has pointed out, had observed Amber twice reaching into her Aunt Mauline's brassiere and removing something. So he had reason to believe that the two women were concealing something on their purses. Now, under this Court's precedent in Bull v. City of San Francisco, he didn't even have to have reasonable suspicion to order the strip searches because of the search. Well, in that case, it involved purely a policy. Actually, those plaintiffs that challenged the specific searches were left out of the class. It was a class action about a policy. And that's different, I think, than this case. It's just an ordinary search case. It's not necessarily governed by Bull. Certainly. This isn't a challenge to a policy. Your Honor is correct. And that case was a 1983 case. We think it is relevant. Sure. I mean, it's relevant for some of the overarching principles. But fundamentally, this is about cause to search further rather than a policy. I mean, there's no evidence to record in the policy. Right. Except for the testimony. And I think having looked at the policy, which is in the regulations, I question whether or not the search was in conformance with the policy. Certainly. As Your Honor has pointed out, the policy is not being challenged here. There's no claim that the searches were not done in accord with the policy or that the policy itself was facially unconstitutional. Right. Well, we don't even know. The policy is not in the record. Right. That's correct. And so even if we don't rely on the lack of a need to have reasonable suspicion, in the jail context, the decisions of Fuller v. M.G. Jewelry and Kennedy that were relied on by the defendants say that all you need in the jail context is reasonable suspicion then to do a search. But what case do you rely on to say that you can have a tactile search as opposed to a visual search? There's no case directly dealing with a tactile search that does not involve actual penetration of a body cavity search. So are you willing to say, then, that this case should be judged by the standards applicable to physical body cavity searches? No. We would actually argue, well, there are two searches. But the search with respect to Walling, which is the one that you're referring to where there was the swipe of the hand and the actual touching involved, which the judge found that there was no penetration, we would argue that at most it would be that the standard for a rectal cavity search in this Court, Vaughn v. Ricketts, says that that is you have to have a reasonable cause, which the Court says is actually less than probable cause and that it be done in a reasonable manner. We think that the standard should be less than that because we don't have the concerns about injury, severe pain, infection that occur when you actually have penetration of body cavity. So you're saying that there is a third category as to which there's no precedent? That is correct. And Bullitt did not involve body cavity searches. It was a visual search, at least so they contended. That is correct. So the two searches are different, and maybe you could distinguish them. The search of Amber was preceded by some viewing of contraband from her. Then there was a physical inspection. And then it proceeded in sort of a graduated fashion. If I understand the facts right with Walling, it began with a body cavity search. So explain to me why in Walling's case that it was reasonable to start with a body cavity search prior to this visual search that preceded it. Certainly. With Walling, I don't believe that there's anything in the record that suggests there was not a visual search, simply that there were no drugs that came out during the visual search. It was only during the swipe through the groin area that the bag of methamphetamine fell out. And at that point, the officers conducting the search already knew that Amber had, in fact, stored methamphetamine in her vaginal cavity. So with all of that information, even if you were analyzing this under the standard for a penetration search, they only needed to have a reasonable cause and that the search be done in a reasonable manner. It did happen in this escalating manner where they didn't actually do penetration at first. It was simply the sweep. And they actually, I believe that there was actually a visual search beforehand. I don't think so, but I could be wrong on that. I mean, that was what concerned me in looking at the record is it appeared that they started with the body cavity search as opposed to a graduated approach to it. And you're relying for good cause on one, she had a prior experience. Two, they found drugs on Amber. Those are the two things. Those two we think are enough, but there were other factors. For instance, in both the Fuller and Candy cases, they said the fact that you were alone could be enough to offer reasonable suspicion to conduct such a search. Here, Amber and Wallien had been detained for a drug-related offense. They had found the drug straws with drug residue in Wallien's purse. And finally, though we don't think the Court necessarily needs to rely on this based on all those other factors, the Officer Johnson did have the tip from a dispatcher and family member of the Bears that Wallien had received a large shipment of drugs that evening, and that she and Amber were driving around with two gentlemen in Amber's car, and presumably they were driving around to distribute those drugs. Those five factors together probably add up to probable cause, let alone reasonable suspicion to conduct such a search. Unless the Court has further questions on that at the moment, I don't think so. The only final question I have on that is I did take a look at the Federal regulations that nobody cited, and I apologize for not sending out a note on it. But to my reading of it, it would appear that, in fact, the policy governing this for the BIA was not as portrayed to the district court, that, in fact, there were some restrictions that were not followed in this case. Assuming for the sake of argument that's true, and don't worry, if it's important, we'll let you brief it, does that make a difference in this case? I don't think it does because, as you pointed out earlier, the policy is not what is actually challenged here. The main reason the policy is relevant is the fact that it provided simply the justification that the reason the searches were conducted was for the safety of the institution. Whether — in addition, Officer Johnson didn't testify that the BIA policy was the policy of the Fort Belknap jail. It was simply that they followed that policy in terms of being consistent with, as he believed, the regulations required, having some sort of reason to look for. I think he hadn't read the policy, either. Didn't he say that? He did say he had read it. Yeah. Certainly. Do you want to turn to the purse issue? Certainly. And the first thing I would point out, there is something in the record suggesting the size of the purse. It — tab 3, I believe, is Wallian's brief. Page 51, it said it could hold a makeup bag. So it was at least large enough to hold a makeup bag. With respect to Justice O'Connor's question earlier, it doesn't — I don't think it actually has to be an open container with beer in it. We're talking simply that under the Hewton standard, there has to be evidence that would support the offense. Here we were looking about an open container offense. An empty beer can would be evidence supporting that. It might not be enough to convict, but it was additional evidence that the other people in the car were participating in this open container violation. In the same manner, actually a full beer can in the purse would have suggested that. So the container didn't necessarily need to still have alcohol in it. Well, it says, you know, the Fort Belknap Tribal Code says a person commits the offense of open container when he uses drinks or consumes beer while in a motor vehicle. Certainly. So your argument is that you could search a purse to see whether there was an empty can, which might have indicated that they were using it some prior time? That would have been additional circumstantial evidence that they were using at that time. We don't know the size of the purse except it could hold a little bit of a make-up container. It could hold a make-up container. And what was the size of the make-up container? What does the record say? That was not in the record, how large the make-up container was. So we really don't know whether it was big enough to hold a can of beer. I would suggest a crushed can of beer could probably fit in if a make-up container could fit in, but certainly. I would like to raise one point. Amber Bear said that she was also challenging the purse search. It wasn't raised in her brief. We didn't do research on standing, but there may have been a standing argument. Had she raised it, we would have done that research to discuss that. So I think she waived her argument with respect to the purse. It seems to me the critical issue with respect to the search of the purse is whether or not Amber's general consent covered consent to open up the purse, leaving the automobile exception aside that you were looking for evidence. Certainly. The testimony is it was either in between the two or on the seat. The officer couldn't remember. And the officer said, but it was in the passenger area. From that, how do we discern that Amber had given permission to open up a purse that was in the passenger area that arguably you could infer was a passenger's? Certainly. We would ask this Court to look at three cases in particular, the Welch decision, the Melgar decision from the Seventh Circuit that we discussed. What's the second? You're not articulating clearly, and I can't hear what you're saying. Sorry, Your Honor. Why don't you move the microphone up just a little bit. Sorry, Your Honor. The three cases. You refer to the Welch decision, and what else? The Welch decision, the Melgar decision from the Seventh Circuit. Melgard? Melgar from the Seventh Circuit. All right. And the final one is Ruiz, which is also from this circuit, discussing the Welch decision. Our position is that those three cases taken together stand for the proposition that when someone with authority over a host property, say a vehicle or an apartment, provides consent to search that host property, that that consent and authority extend out to containers in that car unless there is a fact that would make such a — would make the belief that that container also belonged to that person unreasonable. This follows, first of all, from the Welch decision, where Judge Reinhart discussed mistake of fact and mistake of law, pointing out that a mistake of fact is okay, where if we have a purse in a car and we assume that it belongs to the owner, because she also happens to be a woman, that would be a mistake of fact. Maybe it belongs to the other person. Maybe it doesn't. That's a mistake of fact. That's okay. A mistake of law occurs where we have an indication that there's a reason, there's a strong reason to believe that it would be unreasonable to think that person, that purse actually belongs to the person just because it's in the host container, a situation where the purse is labeled Walleen's Purse, where Walleen says that's my purse. So the default rule from those three cases is we assume that it's a mistake of fact unless there's a reason that would make that assumption unreasonable, a fact that would make that unreasonable. And at that point, then we have to assume that it's a mistake of law. In this case, unlike in Welch, the person providing consent was also a woman. So there was nothing unreasonable about assuming that that purse belonged to Amber. Even if it's in the passenger area, that may make it reasonable to believe that it belongs to Walleen, but that doesn't make it unreasonable to believe that it belongs to Amber. And so we believe those cases stand with the proposition that the search here was therefore appropriate because there simply wasn't a fact that made it unreasonable to believe that the purse belonged, in fact, to Amber. Well, it was on the passenger side. That's what, I mean, the logic, the officer did not testify that he thought it was Amber's purse, correct? Correct. There's no testimony. You just said I found it either on the passenger, it was in the passenger area, either on the counsel or the seat. That is correct. Is there anything in the record that indicates that the officer thought it was Amber's purse? There's no indication either way. But I think the Melgar decision makes quite clear that as long as, as long as there's no indication that it shouldn't be, that it couldn't be considered to be her purse, then that's okay. In that case so far on the backseat, that would be fine, or in the trunk? In this case, if it were in the backseat, it might even be arguably more likely since the two people in the backseat were men, but even if they had both been women, it's still her car. There's nothing that would make it unreasonable. If it had been in the trunk, I think it's, again, even more likely that it's Amber's purse. Would that still be a mistake of fact rather than a mistake of law where the officer more likely thought he could search any purse in the car rather than thinking that he was searching the driver's purse? If there had been an indication of that sort in the record, then I don't, then I don't think we could go sort of off this default rule that we assume it's a mistake of fact because there would be something indicating specifically that it was, in fact, a mistake of law. Going back to the Melgar decision, they thought that default rule was appropriate. The woman who was actually challenging the purse had left an apartment. Consent had been provided by another woman, and she said, well, you should have known it was my purse simply because you'd already searched her purse. And Judge Diane Wood said, no, that doesn't make it unreasonable to think that this is still her purse because it was in her host property that she had provided consent to search. Right. Of course, that decision doesn't control us, does it? That's true. But Ruiz, in that case, they put out this proposition as well, and they use it to support the fact that because there was reason to believe that the person who had provided authorities to search a trailer house, when he later provided consent to search a container that was there, a gun case, they used that proposition to explain that it was also reasonable to assume that he had consent over the gun case because they believed that he had authority over the host property. I understand that rule in connection with trailers or apartments or real property, but do you really think that applies to automobiles where people are taking purses or containers with them as a matter of routine and it's catching a ride? I do because I think people are also taking purses into an apartment and leaving them when they're there with people who are comfortable. So I think it does apply. Judge Wood in the Malgar decision said, quite frankly, if this had occurred in the case of Wyoming v. Houghton and the ability to search under that. Our questions have taken over your time. Do you have any further questions? No. All right. Thank you, counsel. Thank you. We have two minutes. Very briefly, there is an indication in the record about who owned the purse, and I'd direct the court to tab 3, page 32. This is Officer Moore on cross. In fact, Waleen Bair did not have anything in her possession except a purse. No. Is that correct? That is correct. So Officer Moore knew that it was Waleen's purse. Deputy Winfield, same tab, tab 3 at 43, indicated, at that time my curiosity was leaning toward who they were. They informed me they were Amber Bair and Waleen Bair. So he knew that there were two women, and he went straight after Amber's consent and searched the purse. He knew that Waleen Bair was there, and he knew that she was a passenger, and he searched the front passenger compartment. So there is an indication in the record as to who owned that purse. Ruiz doesn't apply. Welch is the controlling case, Your Honor. And it prohibits this search. Thank you, counsel. In reviewing my brief, I did address the illegal search of the purse in my brief. It's on page 16. I also talked about the lack of probable cause for the stop when they found the drug residue in the purse. So I don't think I've waived that issue. Now, secondly, my most important point is that that invasive body cavity search should only be used in the most important circumstances. This wasn't one of them. There was no danger to the people in this jail. In fact, testimony didn't even show there may have been one or two people in this jail. And they were watching them with a video camera. As I say, they could have gone and got a warrant and done this search under more safe circumstances. I think doing this search in this jail under those circumstances could endanger the health of these women. Thank you, counsel. Thank you. The case is here. It will be submitted for a decision. Thank you all for your arguments.
judges: O'connor, Reinhardt, Thomas